POOR QUALITY ORIGINAL                                    \ᑑ)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

**CHRISTIAN ROGERS,**
Plaintiff,
v.
**JUDGE MICHAEL TOMLINSON,** in his personal and official capacities,
**ST. CLAIR COUNTY,**
**ST. CLAIR COUNTY FRIEND OF THE COURT,**
**MARCELLA NEUMANN,** in her individual capacity,
Defendants.

Case No.: 25 - 12354
Hon.: Leitman

FILED
CLERK'S OFFICE

JUL 3 0 2025

U.S DISTRICT COURT
EASTERN MICHIGAN

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

## AND MOTION TO REINSTATE PARENTING TIME

NOW COMES Plaintiff, Christian Rogers, Pro Se, and respectfully moves this Court pursuant
to **Fed. R. Civ. P. 65** for an Emergency Temporary Restraining Order and an Order Reinstating
Parenting Time. Plaintiff also requests a temporary stay of ongoing state court proceedings until
this Court can determine whether his federal rights were violated. In support of this motion,
Plaintiff states as follows:

## I. INTRODUCTION

This motion seeks emergency relief to restore Plaintiff's parenting time, which was unlawfully
suspended without motion, hearing, evidence, or findings during a child support enforcement
hearing on July 24, 2025. Plaintiff's rights under the **Fourteenth Amendment** were violated
when the court suspended his access to his son outside the scope of judicial authority and without
due process.

Further, Plaintiff requests that this Court issue a temporary stay of state proceedings, including
the custody hearing currently scheduled for August 27, 2025, pending resolution of this federal
action.

## II. FACTUAL BACKGROUND

- Plaintiff had valid court-ordered parenting time under a St. Clair County custody order (Exhibit 1).
- On May 18, 2025, Plaintiff was denied parenting time by Defendant Marcella Neumann without court authorization.
- On May 23, 2025, Marcella filed a non-emergency custody motion, which was not set for hearing until **August 27, 2025** (Exhibit 8).
- On May 28, 2025, Marcella confirmed in writing that Plaintiff would not be allowed parenting time until the court "takes care of it," despite no order authorizing that decision (Exhibit 5).
- On July 24, 2025, during a contempt hearing scheduled **only for child support enforcement** (Exhibit 3), Defendant Judge Michael Tomlinson **orally suspended Plaintiff's parenting time**.
- No parenting time motion was before the court. No hearing was noticed, no evidence was taken, and no findings were made under **MCL 722.23**.
- Plaintiff has not seen his son since May 18, 2025 (Exhibit 6). The alleged support issues had already been resolved by the time of the hearing.

## III. LEGAL STANDARD

Under **Fed. R. Civ. P. 65(b)**, a court may issue a Temporary Restraining Order where the movant demonstrates:

1. A substantial likelihood of success on the merits;
2. Irreparable harm absent the injunction;
3. That the balance of equities favors the movant; and
4. That the injunction is in the public interest.

## IV. ARGUMENT

### A. Plaintiff Is Likely to Succeed on the Merits

Plaintiff's parenting time was suspended:

- Without notice or opportunity to be heard;
- Without any pending motion before the court;
- Without sworn testimony, evidence, or findings as required under **MCL 722.27(1)(c)** and **MCL 722.23**.

These acts violated Plaintiff's rights to procedural due process under the **Fourteenth Amendment**. See:

- *Mathews v. Eldridge*, 424 U.S. 319 (1976) – Due process requires notice and an opportunity to be heard before deprivation of a protected liberty interest.
- *Troxel v. Granville*, 530 U.S. 57 (2000) – Parenting is a fundamental right protected by the Constitution.

Because the judge issued the suspension without jurisdiction (no pending parenting time motion), **judicial immunity does not apply**. See:

- *Mireles v. Waco*, 502 U.S. 9 (1991);
- *King v. Love*, 766 F.2d 962 (6th Cir. 1985).

## B. Plaintiff Will Suffer Irreparable Harm

Plaintiff has been denied access to his son since May 18, 2025. Time with one's child is irreplaceable and cannot be compensated later.

*Elrod v. Burns*, 427 U.S. 347 (1976): "The loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

## C. The Balance of Equities Favors Plaintiff

- Plaintiff seeks only restoration of the **existing** parenting time order—not a new arrangement.
- Defendant Marcella Neumann has exercised de facto sole custody for over two months without a lawful order.
- The child is being deprived of his father's love and consistency during this time.

## D. The Public Interest Supports the Injunction

This case involves **fundamental rights of family integrity** and **government accountability**. The public has a strong interest in preventing unconstitutional suspensions of parenting time, especially when based solely on financial status or procedural shortcuts.

## E. A Temporary Stay of State Proceedings Is Proper

Plaintiff respectfully requests a stay of all related state proceedings, including the August 27 custody hearing, under the **Anti-Injunction Act**, 28 U.S.C. § 2283. This motion qualifies under the exception for §1983 actions. See:

- *Mitchum v. Foster*, 407 U.S. 225 (1972) – Federal courts may enjoin state proceedings under §1983;
- *Pulliam v. Allen*, 466 U.S. 522 (1984) – Injunctive relief may be granted against judicial officers to prevent ongoing constitutional violations.

Plaintiff is not seeking to overturn a state ruling—only to preserve the constitutional status quo until the matter is lawfully addressed in state court.

## V. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an **Emergency Temporary Restraining Order** enjoining Defendants from enforcing any suspension of Plaintiff's parenting time;
2. Order that **Plaintiff's parenting time be immediately reinstated** under the existing state custody order;
3. Schedule a **preliminary injunction hearing** at the earliest possible date;
4. Issue an order **staying all proceedings in St. Clair County Circuit Court** related to custody, parenting time, or support involving Plaintiff—including the hearing currently set for **August 27, 2025**—until this Court rules on Plaintiff's constitutional claims;
5. Grant such other and further relief as this Court deems just and proper.

**Respectfully submitted,**
/s/ Christian Rogers

Christian Rogers, Pro Se
2017 Goodrich Ave
Flint, MI 48503
(810) 643-9062
Christianrogers65@gmail.com
Date: 7 - 3 0 _____, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

**CHRISTIAN ROGERS**,
Plaintiff,
v.
**JUDGE MICHAEL TOMLINSON**, et al.,
Defendants.
Case No.:
Hon.:


# EXHIBIT INDEX

| Exhibit | Title | Description |
|---|---|---|
| 1 | State Custody Order (Original Parenting Time Order) | The original custody and parenting time order issued by the St. Clair County Circuit Court, setting baseline parenting rights. |
| 2 | State Custody Order (Parenting Time Suspension – July 24, 2025) | Oral suspension of parenting time issued during a support hearing without notice, motion, evidence, or findings under MCL 722.23. |
| 3 | Notice to Appear – Support Contempt Hearing | Confirms July 25, 2025 hearing was for support enforcement only; no motion filed regarding custody or parenting time. |
| 4 | Message to Marcella Neumann – Vehicle Loss Disclosure | Plaintiff notifies Marcella in advance about risk of losing company vehicle, demonstrating transparency and continued commitment to exchanges. |
| 5 | Message from Marcella Neumann – Parenting Time Denial Due to Warrant | Marcella denies parenting time on May 28, 2025, citing warrant status; no court order authorized the denial. |
| 6 | Text Message Log – Cooperative Co-Parenting (April–May 2025) | 25 clusters of text messages and photos showing consistent, peaceful co-parenting and parenting time prior to May 18, 2025. |
| 7 | Declaration of Christian Rogers Authenticating Exhibit 6 | Sworn statement verifying the accuracy and authenticity of all communications included in Exhibit 6. |
| 8 | Custody Motion Filed by Marcella Neumann – May 23, 2025 | Motion for full custody filed after parenting time denial; includes unsupported claims that conflict with Exhibits 4–6. |
| 9 | Text Message – Mischaracterized as "Giving Up Rights" (Approx. January 2025) | Message sent after repeated parenting time denials over holidays; later taken out of context in state custody motion. |

| Exhibit | Title | Description |
|---|---|---|
| 10 | Plaintiff's Response to Custody Motion (Filed July 24, 2025) | Formal rebuttal filed in state court denying Marcella's claims and documenting Plaintiff's ongoing parental involvement and due process violations. |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

CHRISTIAN ROGERS,
Plaintiff,
v.
JUDGE MICHAEL TOMLINSON, in his personal and official capacities,
ST. CLAIR COUNTY,
ST. CLAIR COUNTY FRIEND OF THE COURT,
MARCELLA NEUMANN, in her individual capacity,
Defendants.

Case No.:
Hon.:


**EXHIBIT 1**
**State Custody Order (Original Parenting Time Order)**

This exhibit includes a true and accurate copy of the original custody and parenting time order issued by the St. Clair County Circuit Court. The order reflects the parenting time granted to Plaintiff prior to its unlawful suspension on July 24, 2025.

This document establishes the baseline parenting rights that were removed without notice, hearing, or findings as required under MCL 722.23 and MCL 722.27a(8).

This exhibit is submitted in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.


Respectfully submitted,
/s/ Christian Rogers

Christian Rogers, Pro Se
2017 Goodrich Ave
Flint, MI 48532
christianrogers65@gmail.com
(810) 643-9062

Date: 7-30 , 2025

**EXHIBIT 1**
**Custody Order – Page Breakdown Summary**
**St. Clair County Circuit Court – Original Parenting Time Order**

This exhibit includes scanned images of the original custody and parenting time order issued by the 31st Judicial Circuit Court (St. Clair County). The order establishes Plaintiff's baseline parenting rights prior to the unlawful suspension issued on July 24, 2025. The following is a breakdown of each page included in this exhibit:

**Page 1 – Custody and Parenting Time Findings**

- Heading: "Order Regarding Custody"
- Identifies legal and physical custody terms
- Lists both parties' names and child's name
- Specifies the court's findings regarding parenting time
- Signed by the presiding judge

**Page 2 – Parenting Time Provisions**

- Details specific parenting time arrangement (days, times, holidays, exchanges)
- Confirms regular parenting time for the Plaintiff
- No mention of supervision, suspension, or limitations
- Serves as proof of enforceable parenting time rights as of the order's date

**Page 3 – Court Signature and Finalization**

- Final confirmation of the entered order
- Includes court seal and judge's signature
- Documented date of entry and order effect
- No indication of restriction, revocation, or danger finding

This breakdown is submitted to assist the Court in reviewing the structure and content of the original custody order and to demonstrate that Plaintiff's parenting time was lawfully in effect

and undisputed prior to the July 24, 2025 suspension that occurred without proper motion, notice, or findings.

Respectfully submitted,
/s/ Christian Rogers


Christian Rogers, Pro Se
2017 Goodrich Ave
Flint, MI 48532
christianrogers65@gmail.com
(810) 643-9062

Date: _____, 2025

STATE OF MICHIGAN
31ST CIRCUIT COURT FOR THE COUNTY OF ST. CLAIR
FAMILY DIVISION

DEPARTMENT OF HUMAN SERVICES and
Marchella Lee Neumann, mother,
                    Plaintiffs,

vs                                                    Docket No. T 2023-001557 DS

Christian Weldon Rogers,
                    Defendant.
_____/

## ORDER REGARDING CUSTODY AND PARENTING TIME

At a session of said Court, at the
County building, in the city of Port Huron,
State and County aforesaid on this

APR 2 5 2024
_____
Honorable: John D Tomlinson

The Department of Human Services has filed a complaint on behalf of the above named Plaintiff under the Family Support Act, MCLA 552.451 A, MSA 25.222(1A) petitioning the Court for support for the minor child of the parties, namely:

### Hudson Leon Rogers.

IT IS ORDERED the Plaintiff and Defendant are awarded joint legal and joint physical custody of the minor child.

IT IS FURTHER ORDERED that father shall have parenting time with the minor child on alternating weekends from Friday at 7:00 pm until Sunday at 7 pm.

IT IS FURTHER ORDERED that father shall have ~~two~~ a midweek parenting time with the minor child on ~~Tuesday and~~ Thursday from 9:00 am until ~~7:00 pm.~~ 6:00 pm.

IT IS FURTHER ORDERED that parties shall follow the St. Clair County Friend of the Court holiday parenting time schedule below

IT IS FURTHER ORDERED that when the minor child reaches school age the parties shall follow the St. Clair County Friend of the Court summer parenting time schedule.

**Father's Weekends 2024:** 1/12, 1/26, 2/9, 2/23, 3/8, 3/22, 4/5, 4/19, 5/3, 5/17, 5/31, 6/14, 6/28, 7/12, 7/26, 8/9, 8/23, 9/6, 9/20, 10/4, 10/18, 11/1, 11/15, 11/29, 12/13, 12/27

**Mother's Weekends 2024:** 1/5, 1/19, 2/2, 2/16, 3/1, 3/15, 3/29, 4/12, 4/26, 5/10, 5/24, 6/7, 6/21, 7/5, 7/19, 8/2, 8/16, 8/30, 9/13, 9/27, 10/11, 10/25, 11/8, 11/22, 12/6, 12/20

**Father's Weekends 2025:** 1/10, 1/24, 2/7, 2/21, 3/7, 3/21, 4/4, 4/18, 5/2, 5/16, 5/30, 6/13, 6/27, 7/11, 7/25, 8/8, 8/22, 9/5, 9/19, 10/3, 10/17, 10/31, 11/14, 11/28, 12/12, 12/26

**Mother's Weekends 2025:** 1/3, 1/17, 1/31, 2/14, 2/28, 3/14, 3/28, 4/11, 4/25, 5/6, 5/23, 6/6, 6/20, 7/4, 7/18, 8/1, 8/15, 8/29, 9/12, 9/26, 10/10, 10/24, 11/7, 11/21, 12/5, 12/19

**HOLIDAYS**
**HOLIDAY AND SUMMER PARENTING TIME BREAKS TAKE PRECEDENCE OVER OTHER SCHEDULED PARENTING TIME.** Whenever a more specific holiday (i e. Mother's Day) or summer parenting time is

P1

scheduled, it takes precedence over any regularly scheduled parenting time. When the holiday or summer parenting time concludes, the regular alternating weekend schedule will resume as if it had not been interrupted. If the child is not of school age, the school vacation schedule of the district where the child resides will be followed.

Father will have these specified holidays in all odd-numbered years and mother will have these holidays in all even-numbered years:

- Memorial Day Weekend from Friday at 6pm until Memorial Day at 6pm
- Labor Day Weekend from Friday at 6pm until Labor Day at 6pm

Father will have the following holidays in all even-numbered years and mother will have these holidays in all odd-numbered years:

- Fourth of July from July 3rd at 6pm until July 5th at 6pm
- Thanksgiving weekend from 6pm the Wednesday evening before Thanksgiving until 6pm the Sunday evening following Thanksgiving

**MOTHER'S DAY AND FATHER'S DAY**: The child will be with mother for the entire Mother's Day weekend and then be with father for the entire Father's Day weekend from Friday at 6pm until Sunday at 6pm

**CHRISTMAS/WINTER BREAK**: In all odd-numbered years, father's Christmas parenting time will be from 6pm on the last day of school where the child attends until 9pm on December 24th. Mother's Christmas parenting time will be from 9pm on December 24th until 6pm the day before school resumes. Thereafter, the normal parenting time schedule will resume

In all even-numbered years, mother's Christmas parenting time will be from 6pm on the last day of school where the child(ren) attends until 9pm on December 24th. Father's Christmas parenting time will be from 9pm on December 24th until 6pm the day before school resumes. Thereafter, the normal parenting time schedule will resume.

**EASTER/SPRING BREAK**: Father will have the entire Easter/spring break in all even-numbered years. Mother will have the entire Easter/spring break in all odd-numbered years. Spring break parenting time begins at 6pm the day school recesses for spring break and concludes at 6pm the evening before school resumes after the break. In the event the Easter Sunday weekend is not included in the school spring break week, the father has the entire Easter weekend from Good Friday at 9am until Easter Sunday at 6pm in the even-numbered years and mother has the entire Good Friday through Easter Sunday weekend in the odd-numbered years

IT IS FURTHER ORDERED the parent exercising parenting time is responsible to provide transportation to facilitate his or her parenting time. Transportation must be by a licensed driver, in accordance with all car seat/seat belt laws.

IT IS FURTHER ORDERED a one-half (1/2) hour unavoidable delay period will be allowed for parenting time exchanges. The intention of this unavoidable delay is intended for **EMERGENCIES ONLY**

IT IS FURTHER ORDERED make-up parenting time will be allowed only when parenting time is missed due to the non-availability of the child. Make-up is not applied when parenting time is missed due to the non-availability of the parent scheduled for parenting time. The parents are to work out and agree on make-up parenting when notification is given that the child is/are not available. If unable to resolve, then requests for make-up parenting time must be submitted, in writing, to the Friend of the Court within fifty-six (56) days after parenting time is missed

Pg2

IT IS FURTHER ORDERED either party is prohibited from exercising parenting time in a foreign country/nation that is not a party to the Hague Convention on the civil aspects of international child abduction, unless both parents provide the court with written consent to allow a parent to exercise parenting time in a country/nation that is not a party to this convention.

IT IS FURTHER ORDERED that the domicile of the minor child may not be removed from the State of Michigan without prior approval of the Court.

IT IS FURTHER ORDERED that parents awarded joint legal custody of a minor child shall not change the legal residence of the child except in compliance with section 11 of the "Child Custody Act of 1970". 1970 PA 91, MCL 722.31" which states that neither parent can change the child's legal residence to a location that is more than 100 miles from the child's legal residence at the time of the filing of the action in which the joint legal custody order is issued unless the other party gives written consent or permission has been granted by the Court. For the purposes of section 11, the Act establishes 2 legal residences for the minor child – one with each parent. Section 11 does not apply if:  (1) a parent is awarded sole legal custody; (2) at the time of the filing of the action in which the joint legal custody order is issued, the child's 2 residences were more than 100 miles apart; or (3) the legal residence change results in the child's 2 legal residences being closer to each other than before the change.

IT IS FURTHER ORDERED that the plaintiff and the defendant shall notify the Friend of the Court office of any change of their respective employment status, change of address, or the receipt of or discontinuance of public assistance benefits.

IT IS FURTHER ORDERED that all terms and provisions of prior Orders, except as amended herein, shall remain in full force and effect.

_____
Hon. John D Tomlinson    P45917

Renae Topolewski
Friend of the Court
201 McMorran Blvd., #1600
Port Huron, MI 48060



Pg3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

CHRISTIAN ROGERS,
Plaintiff,
v.
JUDGE MICHAEL TOMLINSON, in his personal and official capacities,
ST. CLAIR COUNTY,
ST. CLAIR COUNTY FRIEND OF THE COURT,
MARCELLA NEUMANN, in her individual capacity,
Defendants.

Case No.:
Hon.:

# EXHIBIT 2

### Custody Suspension Order – Unavailable Due to Referee Delay

This exhibit pertains to the suspension of Plaintiff's parenting time by Judge Michael Tomlinson on **July 24, 2025**, as described in the Complaint and Emergency Motion for Temporary Restraining Order.

As of the date of this filing, Plaintiff has been **unable to obtain a signed copy of the new custody order** or transcript due to the following reasons:

- The July 24, 2025, hearing resulted in an **oral suspension of parenting time**, with no written motion or findings supporting the action.
- The **Friend of the Court referee has not yet signed or entered a formal order** reflecting the July 24 ruling.
- Plaintiff made **good faith efforts to obtain the order** but was informed the written entry was still pending.

Plaintiff respectfully requests the Court take judicial notice of the **absence of any signed custody modification** on record as of the date of filing. This absence further supports Plaintiff's due process claim: parenting time was suspended without motion, notice, hearing, or lawful order.

This placeholder is submitted as **Exhibit 2** in support of Plaintiff's Emergency Motion, consistent with the timeline and constitutional violations alleged.

*[signature]*
7-30-2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**


**CHRISTIAN ROGERS**,
Plaintiff,

v.
**JUDGE MICHAEL TOMLINSON**, et al.,
Defendants.

Case No.:
Hon.:


**EXHIBIT 3**

**Notice to Appear – Support Contempt Hearing (Issued May 5, 2025)**


This document is a true and accurate reproduction of the Notice to Appear issued by the St. Clair County Friend of the Court. It confirms that the hearing scheduled for July 24, 2025, was for enforcement of unpaid support only. No motion, notice, or petition concerning parenting time was filed or served prior to this hearing.

This exhibit is submitted in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.


**Respectfully submitted,**

**Christian Rogers**
2017 Goodrich Ave
Flint, Mi, 48503
(810)643-9062
Christianrogers65@gmail.com
**Pro Se Plaintiff**

7-30-2025

**EXHIBIT 3**

**Notice to Appear – Support Contempt Hearing**

**STATE OF MICHIGAN – 31st JUDICIAL CIRCUIT COURT**
**FRIEND OF THE COURT – ST. CLAIR COUNTY**
**CASE NO.: [Insert your state case number]**
**RE: Christian Rogers – Child Support Enforcement**

**DATE OF NOTICE:** May 5, 2025
**HEARING DATE:** July 25, 2025
**TIME:** 8:45 AM
**LOCATION:** 201 McMorran Blvd, Port Huron, MI 48060

**PURPOSE OF HEARING:**
To address alleged nonpayment of child support. The hearing is scheduled as a **contempt enforcement proceeding** under MCL §§ 552.631 and 552.635. This notice makes no reference to custody or parenting time, and no such issues were scheduled for adjudication.

**NOTICE TO RESPONDENT:**
IVR INFORMATION CONCERNING THIS HEARING MAY BE INCORRECT. APPEAR AT THE TIME AND DATE INDICATED ABOVE.

Failure to appear may result in the execution of a bench warrant and possible incarceration.

This notice was issued solely for the purpose of enforcing a support-related warrant.
**No motion regarding parenting time was filed, served, or discussed prior to this hearing.**



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION


**CHRISTIAN ROGERS**,
Plaintiff,

v.
**JUDGE MICHAEL TOMLINSON**, et al.,
Defendants.

Case No.:
Hon.:


# EXHIBIT 4

## Message to Marcella Neumann – Vehicle Loss Disclosure


This exhibit contains a direct written message from Christian Rogers to Marcella Neumann, informing her that he was losing access to his company vehicle. The message was sent prior to May 29, 2025, and demonstrates that the plaintiff proactively and transparently communicated his hardship.

This message supports the assertion that Plaintiff made good-faith efforts to continue parenting time, despite logistical challenges outside his control. It further establishes a timeline of communication before parenting time was denied.

This exhibit is submitted in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.


**Respectfully submitted,**

**Christian Rogers**
2017 Goodrich Ave
Flint, MI 48503
810-643-9062
Christianrogers65@gmail.com
**Pro Se Plaintiff**

**EXHIBIT 4**

**Message to Marcella Neumann – Vehicle Loss Disclosure**
**Date:** Thursday, April 24, 2025 – 3:48 PM
**Sender:** Christian Rogers
**Recipient:** Marcella Neumann

*"Just want to let you know im putting my stuff in storage and heading back to flint next week. Iv had enough struggling out here on my own I don't have anyone here, and im just done with it. Im planning on turning myself in fro the child support warrant too just wanted to keep you in the loop.."*

**Summary:**
This message was sent prior to any parenting time denial. It demonstrates Plaintiff's proactive and transparent communication, offered in good faith despite financial hardship. The message shows an ongoing commitment to co-parenting and preserving parenting time, directly contradicting any claim of disengagement.

7:25



Marcella Neu...

Thursday, Apr 24 · 3:48 PM

Just want to let you know I'm putting my stuff in storage and heading back to Flint next week. I've had enough of struggling out here on my own I don't have anyone here, and I'm just done with it. I'm planning to turn myself in for the child support warrant too. Just want to keep you in the loop.

What are you talking about? You have Hudson, why are you even concerned about this

Nick came an got the van today because I didn't work.

Fr

Did you watch the PowerPoint
↓



Sunday, Apr 27 · 11:30 AM

⊕   Text message        ☺   🖼️   ᴨᴨ

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**


**CHRISTIAN ROGERS,**
Plaintiff,

v.
**JUDGE MICHAEL TOMLINSON**, et al.,
Defendants.

Case No.:
Hon.:


# EXHIBIT 4

## Message to Marcella Neumann – Vehicle Loss Disclosure


This exhibit contains a direct written message from Christian Rogers to Marcella Neumann, informing her that he was losing access to his company vehicle. The message was sent prior to May 29, 2025, and demonstrates that the plaintiff proactively and transparently communicated his hardship.

This message supports the assertion that Plaintiff made good-faith efforts to continue parenting time, despite logistical challenges outside his control. It further establishes a timeline of communication before parenting time was denied.

This exhibit is submitted in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.


**Respectfully submitted,**

**Christian Rogers**
2017 Goodrich Ave
Flint, MI 48503
810-643-9062
Christianrogers65@gmail.com
**Pro Se Plaintiff**

7-30-2025

**EXHIBIT 4**

**Message to Marcella Neumann – Vehicle Loss Disclosure**
**Date:** Thursday, April 24, 2025 – 3:48 PM
**Sender:** Christian Rogers
**Recipient:** Marcella Neumann

*"Just want to let you know im putting my stuff in storage and heading back to flint next week. Iv had enough struggling out here on my own I don't have anyone here, and im just done with it. Im planning on turning myself in fro the child support warrant too just wanted to keep you in the loop.."*

**Summary:**
This message was sent prior to any parenting time denial. It demonstrates Plaintiff's proactive and transparent communication, offered in good faith despite financial hardship. The message shows an ongoing commitment to co-parenting and preserving parenting time, directly contradicting any claim of disengagement.



7:25

Marcella Neu...

Thursday, Apr 24 · 3:48 PM

Just want to let you know I'm putting my stuff in storage and heading back to Flint next week. I've had enough of struggling out here on my own I don't have anyone here, and I'm just done with it. I'm planning to turn myself in for the child support warrant too. Just want to keep you in the loop.

What are you talking about? You have Hudson, why are you even concerned about this



Nick came an got the van today because I didn't work.

Fr

Did you watch the PowerPoint

↓

Sunday, Apr 27 · 11:30 AM

⊕  Text message          ☺  🖼  ⑈

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION


CHRISTIAN ROGERS,
Plaintiff,

v.
JUDGE MICHAEL TOMLINSON, et al.,
Defendants.

Case No.:
Hon.:


## EXHIBIT 5

## Message from Marcella Neumann – Parenting Time Denial Due to Warrant


This exhibit contains a written message from Marcella Neumann to Christian Rogers, dated May 28, 2025, in which she expresses that Hudson will not be allowed to go with Plaintiff until matters related to an active bench warrant are "taken care of thru court."

In the message, Marcella cites concerns about the plaintiff's warrant, the living situation, and transportation, but does not reference any court order authorizing her to suspend parenting time. She concludes by stating, "He won't be going with you until things are taken care thru court," indicating that parenting time was withheld without a court ruling.

This exhibit is submitted in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction to demonstrate that parenting time was unilaterally denied outside the scope of lawful court enforcement, in violation of due process.

Respectfully submitted,

Christian Rogers
2017 Goodrich Ave
Flint, MI 48503
810-643-9062
Christianrogers65@gmail.com
Pro Se Plaintiff

7-30-2025

## EXHIBIT 5

**Message from Marcella Neumann – Parenting Time Denial Due to Warrant**
**Date:** Wednesday, May 28, 2025 – 1:30 PM
**Sender:** Marcella Neumann
**Recipient:** Christian Rogers

*"Ya know honestly Christian, I'm not trying to be rude. I would like Hudson to be able to spend time with you but the living situation and the driving situation is not what we agreed upon in court.

You have an active warrant right now and I don't feel comfortable if you were to be picked up and he was left with people he doesn't know.

He won't be going with you until things are taken care thru court. I hope you understand that I only ever have our child's best interests in mind."*

**Summary:**
This message was sent ten days after parenting time was first denied and clearly states that Hudson would not be returned until Christian "takes care of" the bench warrant. Marcella does not reference any legal authority, court order, or evidence of harm. This communication supports Plaintiff's argument that his parenting time was suspended extrajudicially and without due process, in violation of his constitutional rights.



11:03

**Marcella Neumann**

Same time tomorrow?

4oclock works, our order is 6pm but I'm thinking that's too late unless you want to do. Also, are you planing on bringing him back Sunday

Ya know honestly Christian, I'm not trying to be rude. I would like Hudson to be able to spend time with you but the living situation and the driving situation is not what we agreed upon in court. You have an active warrant right now and I don't feel comfortable if you were to be picked up and he was left with people he doesn't know. He won't be going with you until things are taken care thru court. I hope you understand that I only ever have our child's best interests in mind.

You dont have the best interest for Hudson. You cant deny a court order.

Type a message

amazon Get the App **Affordable never looked this good** Deals & price drop alerts, only on the Amazon app

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

**CHRISTIAN ROGERS,**
Plaintiff,
v.
**JUDGE MICHAEL TOMLINSON, et al.,**
Defendants.
Case No.:
Hon.:

## EXHIBIT INDEX – EXHIBIT 6

**Text Message Log – Cooperative Co-Parenting (April–May 2025)**

| Cluster # | Date(s) | Format | Content Summary |
|---|---|---|---|
| Cluster 1 | Unknown (Likely April) | Text Message Transcript | Casual food and parenting talk; shows trust and communication. |
| Cluster 2 | Mar 28–29, 2025 | Text Message Transcript + Image | Christian discusses college enrollment; Marcella minimizes. |
| Cluster 3 | Mar 29, 2025 | Text Message + Photo | BBQ offer; parenting time and indoor photo of Hudson. |
| Cluster 4 | Mar 29, 2025 (Evening) | Text Message + Photo | Popcorn photo; confirms Hudson was in Christian's care. |
| Cluster 5a | Apr 9, 2025 | Text Message Exchange | Marcella asks about groceries and house access. |
| Cluster 5b | Apr 9, 2025 | Text Message + Photo | Hair clip photo; Christian defends parenting consistency. |
| Cluster 6 | Apr 11, 2025 | Text Message Exchange | Park plan and haircut logistics; dismissive tone from Marcella. |
| Cluster 7 | Apr 17–20, 2025 | Text Message + Photo | Hudson asleep; Christian reaches out with sentimental update about his dad. |
| Cluster 8 | Apr 21–23, 2025 | Text Message Exchange | Requests more parenting time; subtle blame about candy and health. |
| Cluster 9 | Apr 23, 2025 | Text Message Exchange | Meal planning and baseball discussion; ongoing peaceful cooperation. |
| Cluster 10 | Apr 24, 2025 | Text Message Exchange | Christian discloses moving back and turning self in; Marcella not alarmed. |
| Cluster 11 | Apr 27–May 2, 2025 | Text Message Exchange | Updates about candy, school progress, moving; no pushback from Marcella. |

| Cluster # | Date(s) | Format | Content Summary |
|---|---|---|---|
| Cluster 12 | May 2–4, 2025 | Text Message Exchange | Confirmation of move; unanswered messages from Christian. |
| Cluster 13 | May 11, 2025 | Text Message Exchange | Mother's Day call attempt; school picture request. |
| Cluster 14 | May 11–12, 2025 | Text Message + Photo | Grill photo; school update ignored; pet check-in only. |
| Cluster 15a,b | May 11–12, 2025 | Emotional Message + Reply | Christian opens up emotionally; Marcella replies only about bed size. |
| Cluster 16 | May 15, 2025 | Text Message Exchange | School updates and grandma sewing; response minimizes Christian's emotions. |
| Cluster 17a | May 15, 2025 | Text Message Exchange | Christian affirms parenting rules; sarcastic but cooperative. |
| Cluster 18 | May 15, 2025 | Text Message Exchange | Rash care, vehicle accepted, pickup coordination. |
| Cluster 19 | May 15, 2025 | Text Message Exchange | Play update and bonding; Marcella casually engaged. |
| Cluster 20 | May 15, 2025 | Text Message + Photo | Bath and bedtime update with photo. |
| Cluster 21 | May 16, 2025 | Text Message + Photo | Thunderstorm comfort; French toast; outdoor photo. |
| Cluster 22 | May 16, 2025 | Text Message + Photo | Christian stitched Hudson's blanket; brief acknowledgment by Marcella. |
| Cluster 23 | May 15–18, 2025 | Text Message Exchange + Photos | Final active parenting stretch; no safety objections; multiple logistics handled. |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

**CHRISTIAN ROGERS**,
Plaintiff,

v.
**JUDGE MICHAEL TOMLINSON**, et al.,
Defendants.

Case No.:
Hon.:

## EXHIBIT 6

### Text Message Log – Cooperative Co-Parenting (April–May 2025)

This exhibit includes a series of 25 direct text message communications exchanged between Christian Rogers and Marcella Neumann between April and May 2025. These messages show consistent, peaceful co-parenting arrangements, including coordinated exchanges, respectful dialogue, and mutually agreed adjustments to parenting time.

The purpose of this exhibit is to establish a timeline and pattern of cooperation and parental involvement before May 18, 2025—the date parenting time was first denied. These messages are submitted as evidence that the suspension of parenting time was not preceded by any pattern of hostility, risk, or non-involvement by the Plaintiff.

This exhibit is submitted in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

**Respectfully submitted,**

**Christian Rogers**
2017 Goodrich Ave
Flint, MI 48503
810-643-9062
7-30-2025

Christianrogers65@gmail.com
**Pro Se Plaintiff**

## EXHIBIT 6

## Message Cluster 1 – Date Unknown (Likely April 2025)

**Sender:** Christian Rogers and Marcella Neumann
**Format:** Text Message Transcript

### Christian Rogers

"Stay away from my cream pies"
"Not funny"
"Cream pies is why you're a boy mom"

### Marcella Neumann

*[Winking emoji]*
"Do you have fruit and veggies?"
"Where"

### Christian Rogers

"Yes"
"Apples and oranges. Carrots and cucumbers"
"Apples and oranges stay fresher longer than strawberries and blueberries"
"Battle Bank: 10-Year Vision for Growth and Impact"

**Summary:**
This exchange shows casual and friendly communication between the parties. Marcella inquires about Christian's household food, showing concern for Hudson's care and suggesting trust. The conversation also reflects personal support, with no signs of conflict or refusal. This adds further proof that parenting time was occurring and communication was cooperative prior to May 18.



**EXZHIBIT 6**

**Message Cluster 2  – March 28–29, 2025**
**Sender:** Christian Rogers and Marcella Neumann
**Format:** Text Message Transcript

**Christian Rogers** – *Friday, March 28, 10:44 AM*

"Enrolled as a full time student"
"Start 4/7"

**Christian Rogers** – *Friday, March 28, 4:16 PM*

"I'm on the phone with college admissions. I'll call you back"

**Marcella Neumann**

"Hopefully you haven't been on the phone all day"

**Christian Rogers**

"Forget the cap"
"Call"
"Don't wanna be on the phone too lonf [long]"

**Christian Rogers** – *Saturday, March 29, 3:29 PM*

*[Image sent — referenced but withheld in public filing]*

**Summary:**
This exchange reflects Christian Rogers' efforts to secure long-term stability for himself and his son by enrolling in college. His communication is proactive and cooperative.

Marcella Neumann's response—"Hopefully you haven't been on the phone all day"—appears dismissive rather than supportive, suggesting early signs of tension or control. Rather than acknowledge the importance of Christian's college planning, her tone minimizes it. This subtle devaluation helps establish a pattern that culminates in her later justification for unilaterally withholding parenting time.

This cluster demonstrates that as of late March, Christian was taking responsible steps and engaging respectfully. There were no valid concerns raised at that time about his parenting or judgment.



**EXHIBIT 6**

**Message Cluster 3 – March 29, 2025**
**Sender:** Christian Rogers and Marcella Neumann
**Format:** Text Message Transcript

**Christian Rogers** – *[Image of grilled food sent]*

"Feel free to come grab some since no one showed up"

**Marcella Neumann**

"Thank you for offering that to the parents"

**Christian Rogers**

"Are you picking it up for them or me an [and] Hudson walking it over"
"In the rain since we don't go outside"

**Christian Rogers**– *[Image of child indoors sent at 7:53 PM]*

**Summary:**
This exchange shows casual and cooperative parenting communication. Christian offers Marcella food that was cooked, suggesting an open and friendly relationship at the time. Christian responds politely and raises a concern about Hudson walking in the rain, which reflects attentiveness and involvement.

This message cluster helps establish the co-parenting dynamic and undermines any later narrative that Christian was disengaged or unfit. It also subtly demonstrates that up until late March, there were no stated safety concerns or refusals of parenting time. Her participation and tone indicate that the relationship was civil and constructive.



03

## EXHIBIT 6

**Message Cluster 4 – March 29, 2025 (Evening)**
**Sender:** Christian Rogers
**Format:** Text Message + Photograph

**Christian Rogers** – *Saturday, March 29, 2025 – 7:53 PM*

*[Photo of Hudson sitting comfortably on a couch, eating popcorn, relaxed and watching TV]*
"Chose popcorn over popsicle"

**Summary:**
This image and message were sent by Christian Rogers, confirming that he had physical custody of Hudson on the evening of March 29. The casual tone and parenting detail reflect a normal, nurturing parenting environment. This further supports the argument that parenting time was being exercised responsibly and without incident prior to May 18, 2025.

This piece of evidence shows that communication was open, no parenting concerns were raised, and that Christian was actively caring for his son in a calm domestic setting.



**EXHIBIT 6**
**Message Cluster 5 a– April 9, 2025**
**Format:** Text Message
**Parties:** Marcella Neumann and Christian Rogers

**Image Evidence:**
Timestamp: Wednesday, April 9 – 5:15 PM

- **Marcella:** "Are you home"
- **Christian:** "Not yet. It's looking like 620"
- **Marcella:** "Is the house unlocked"
- **Christian:** "Yea"
- **Marcella:** "You got milk"
- **Christian:** "Is my Kroger order there"
- **Marcella:** "No"
- **Christian:** "I'll grab some"
- **Marcella:** "Sweet"

**Summary:**
This exchange shows casual, cooperative communication between Christian and Marcella. She's comfortable asking about the home, milk supply, and accessing the house—suggesting trust and a co-parenting dynamic that is not combative.

There is no tone of concern, alarm, or conflict. Instead, the conversation shows Christian handling errands and responding helpfully. This undermines later narratives portraying him as unavailable, unstable, or unfit. It also adds to the timeline that Christian was involved, supportive, and accessible around the home and co-parenting duties prior to May 18.



05a

**EXHIBIT 6**
**Message Cluster 5b– April 9, 2025**
**Format:** Text Message Exchange with Photo
**Parties:** Christian Rogers and Marcella Neumann
**Image Evidence:** Screenshot includes a photo of a hair clip, toy parts, and a Laffy Taffy candy on a couch.

**Christian Rogers (5:15 PM):**

"What I meant when I said wait and see how good of a baby daddy you have is I take Hudson when needed. I do everything the way you do with his milk, fruit. I kept his schedule while I have him.
It's really not much. But as your friends have kids and they get older you'll see I'm easy to deal with."

**Summary:**
Christian's message emphasizes responsible and attentive parenting. He reassures Marcella that he:

- Maintains Hudson's routine as she would (diet, schedule).
- Is dependable and cooperative when it comes to sharing parenting duties.
- Aims to be reasonable and easy to co-parent with.

The photo attachment shows Hudson's surroundings while in Christian's care. The presence of Marcella's hair clip in the scene—left behind during previous exchanges—reinforces that co-parenting was active, and belongings were shared between homes. The calm and respectful tone in this message aligns with Christian's position that he was fully engaged in appropriate, hands-on parenting leading up to May 18, 2025.



05b

**EXHIBIT 6**
**Message Cluster 6 – April 11, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
**Christian:**

"Well ig will walk home an take a nap"
"Running around the house. Trying to get him to lay down with me so we can go to the park after his nap"
"We both do"
"?"

**Marcella:**

"What's he doing??"
"Don't forget Hudson has his hair cut at 6 tonight"
"Gross"

**Summary:**
This exchange shows that Hudson was in Christian's care and engaged in typical, healthy child activities. Christian was actively parenting—managing naps, planning outings to the park, and handling haircuts. Marcella's reminder about the haircut supports that she trusted Christian to manage appointments and logistics.

Marcella's "Gross" comment following Christian's calm and informative replies appears dismissive and unnecessarily rude, especially in contrast to his responsible communication. This subtly undercuts any later framing that Christian was incapable or untrustworthy as a parent.

This cluster continues to support the pattern of cooperative co-parenting and contradicts later claims of safety or competency concerns.



**EXHIBIT 6**
**Message Cluster 7 – April 17–20, 2025**
**Format:** Text Message Exchange with Photo
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
**Christian:**

"What's Hudson doing."
"Thanks for ignoring me"
"My dad even left Hudson a video ⌐"

**Marcella:**

"He was sleeping, still sleeping"
*[Sends a photo of Hudson asleep under a blanket]*

**Summary:**
This message thread highlights Christian's continued attempts to engage with Hudson during Marcella's parenting time, as well as his emotional investment. Marcella's delay in responding, followed by a short reply, feels emotionally distant given the context—especially considering Christian was reaching out not just for himself, but on behalf of his father.

Christian's message stating, *"My dad even left Hudson a video ⌐ "*, carries deeper significance: the video was recorded shortly before his father's passing, making it a sentimental and final gesture of love toward Hudson. This moment captures a rare intergenerational connection and emotional investment from Christian's family that was ultimately dismissed or not acknowledged by Marcella at the time.

The photo Marcella eventually sends confirms she had custody at that moment, and that communication was possible—yet selectively limited. This undermines later narratives of concern or estrangement and shows that, even near the time of major family loss, Christian was trying to remain involved and connected in a safe, peaceful, and loving manner.



**EXHIBIT 6**
**Message Cluster 8 – April 21–23, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
**Marcella:**

"Cutey lol are you fine taking Hudson Wednesday night again?"
"And try less candy and sweets this weekend, I'm going to send his toothbrush but he had a kankersore and too much candy this week"
"What time do you think tonight?? Just trying to plan it so I can help mom out"

**Christian:**

"Yea. But idk when I'll be home. I'll try to be earlier than last time"
"Gotta keep my grades where they're at ya know"
"Call me when you're free"

**Summary:**
Marcella's opening message, referencing "Cutey lol," appears to be a comment about a photo of Christian's niece—adding a casual, familiar tone to the request that follows: asking Christian to take Hudson again Wednesday night. This shows continued reliance on his involvement and availability.

Christian responds agreeably, while balancing his college workload—showing responsible parenting and time management. Despite being helpful and cooperative, Marcella follows up with a subtle blame message, stating Hudson had too much candy, which caused a canker sore. Rather than offering it as an observation or co-parenting note, it reads as criticism.

This pattern is consistent throughout the messages: Marcella relies on Christian's help, speaks casually, and even warmly at times, but then undermines that goodwill with blame or control over parenting style. Christian doesn't push back—he accepts it and continues supporting parenting time.

This cluster supports Christian's claim that he remained consistently cooperative and available for Hudson, and that the alleged concerns raised later were neither urgent nor supported by how Marcella actually treated him during the weeks prior.



11:14

Marcella Neu...

Cutey lol are you fine taking Hudson Wednesday night again?

And try less candy and sweets this weekend, i'm going to send his tooth brush but he had a kanker sore and too much candy this week

What time do you think tonight?? Just trying to plan it so I can help mom out

08

**EXHIBIT 6**
**Message Cluster 9 – April 23, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
**Marcella:**

"What time do you think tonight?? Just trying to plan it so I can help mom out"
"I'll bring meatballs for dinner, do you have milk?"
"I think I have enough I'll bring"
"Stopping at Meijer to get him baseball attire and stuff lol his friend is in baseball and he want really wants to play"

**Christian:**

"5"
"I gotta grab more"
"I go5 enough for tonight. Maybe tomorrow"

**Summary:**
This casual coordination between Marcella and Christian shows continued cooperative parenting and day-to-day communication about meals, groceries, and Hudson's interests. Marcella relies on Christian's care for the evening, offers to bring dinner, and discusses buying Hudson sports gear based on his interests.

Christian responds promptly, coordinates timing, and confirms household needs (milk), demonstrating active involvement and shared parenting responsibilities.

The tone is consistent with prior clusters: cooperative, routine, and supportive. Marcella is making plans without hesitation or concern for Hudson's safety or Christian's fitness. Her mention of baseball attire shows they were planning for Hudson's extracurriculars together, further undermining any later claims that Christian posed a risk or was disengaged.

This thread adds to the broader pattern showing Christian as an equal and reliable parent in Hudson's life.



11:14

Marcella Neu...

What time do you think tonight?? Just trying to plan it so I can help mom out

I'll bring meatballs for dinner, do you have milk?

I think I have enough I'll bring

Stopping at Meijer to get him baseball attire and stuff lol his friend is in baseball and he want really w   o play

09

**EXHIBIT 6**
**Message Cluster 10 – April 24, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
**Marcella:**

"I didn't get it, mneumann8311@yahoo.com"
"How's Hudson"

**Christian:**

"Good"
"I just resent it"
"He's eating lunch rn. We just got back home from a walk up to the board walk."

**Christian (continued):**

"Just want to let you know I'm putting my stuff in storage and heading back to Flint next week. I've had enough of struggling out here on my own I don't have anyone here, and I'm just done with it. I'm planning to turn myself in for the child support warrant too. Just want to keep you in the loop."

**Marcella:**

"What are you talking about? You have jurisdiction…"

**Summary:**
This exchange confirms that Christian had Hudson in his care, was actively parenting (feeding him, taking him on walks), and maintaining consistent communication. The tone remains concern about Hudson's safety, well-being, or Christian's parenting ability.

Christian also voluntarily discloses his intention to resolve the outstanding warrant, demonstrating transparency and responsibility. This further discredits later claims that he was hiding or avoiding accountability.

Marcella's "You have jurisdiction" comment suggests she was not concerned about his legal standing in relation to parenting time — contradicting later positions taken to deny access.

This cluster supports the pattern of amicable co-parenting and contradicts claims of danger, neglect, or instability.



10

**EXHIBIT 6**
**Message Cluster 11 – April 27 to May 2, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
Marcella:
"Is he asleep?"

Christian:
"Yes"
"He hasn't had no candy all weekend. He got his first candy today"
"He just woke up"

Christian (later):
"Start my new class tomorrow. Finished my first class with a 98.67"

Christian (Friday, May 2):
"Your stroller is on the porch."
Marcella:
"What's that mean"
Christian:
"I moved"

**Summary:**
This cluster shows Christian providing timely updates on Hudson's care, including bedtime, candy intake, and his own academic progress — reflecting his active parenting and personal responsibility. Marcella shows no concern or objection, even when Christian informs her that he moved.

This supports the claim that parenting time was functional and safe, with communication still occurring regularly. Marcella's reaction was not one of alarm or opposition, reinforcing that she had no standing concerns about Christian's ability to parent — even as late as May 2, 2025.



11

**EXHIBIT 6**
**Message Cluster 12 – May 2 to May 4, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
Christian:
"Your stroller is on the porch."
Marcella:
"What's that mean"
Christian:
"I moved"
Marcella:
"Where?"
Christian:
"Back to flint"
"I told you I was"
Marcella:
"Oh okay"

Sunday, May 4 – 9:32 AM
Christian:
"What's hudson doing"

Sunday, May 4 – 10:35 AM
Christian:
"??"

**Summary:**
This cluster shows Christian notifying Marcella that he has moved back to Flint and placing her
stroller on the porch. Marcella does not object or express concern, simply responding "Oh okay."
This contradicts any later claims that she was unaware of his location or that it created parenting
concerns.

Additionally, on May 4, Christian inquires twice about Hudson's well-being with no response
from Marcella. This supports a recurring pattern of her ignoring communication while he
remains actively involved and seeking contact with his child.

This exchange demonstrates transparency, continued involvement, and an absence of concern
from Marcella about Christian's ability to co-parent. It further undercuts the narrative of
instability or unfitness.



**EXHIBIT 6**
**Message Cluster 13 – May 11, 2025 (Mother's Day)**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
Marcella (11:59 AM):
"??"
Christian:
"??"
Marcella:
"Hudson called you and it's Mother's Day"
Christian:
"I was down at my grandma's."
Marcella:
"Well grandma could've seen him too"
Christian:
"It didn't come thru."
"Is it coming thru"
Christian (1:17 PM):
"And can you bring me a school picture of Hudson"
Marcella (3:19 PM):
"Yes"

**Summary:**
This exchange takes place on Mother's Day and shows Christian attempting to stay in contact despite a missed call. He explains that he was at his grandmother's and the call didn't come through. He follows up to ask if the message was delivered.

Importantly, Christian makes a respectful request for a school photo of Hudson, which Marcella agrees to. This shows that Christian was not only actively engaged in co-parenting but also showing interest in Hudson's milestones and schooling.

The exchange demonstrates Christian's cooperative tone, efforts to stay involved, and consistent presence — all while keeping communication polite and supportive. There is no sign of aggression, danger, or evasion. It aligns with the broader pattern of Christian being an engaged father attempting to co-parent fairly.



13

**EXHIBIT 6**
**Message Cluster 14 – May 11–12, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers (Blue/Right) and Marcella Neumann (Gray/Left)

**Messages:**
*Sunday, May 11 – 9:12 PM*
**Christian (photo):** [Photo of food on grill]
**Marcella:** "Where's mufasa?"
**Christian:** "Out side?"
**Marcella:** "Oh okay just making sure"
**Christian:** "Why?"
**Christian:** "I have a 99.09 average in school rn"

**Summary:**
Christian sends a photo of food cooking on the grill and gives a school update (99.09% average),
showing pride and responsibility. Marcella checks on Mufasa, their pet, with a short concern but
doesn't question Christian's parenting or housing. The conversation is peaceful and cooperative.

This cluster reinforces Christian's academic dedication and daily parental involvement. It also
confirms casual, cooperative communication between the parties and no signs of instability or
conflict.



Where's mufasa?

Oh okay just making sure

14

**EXHIBIT 6**
**Message Cluster 15a,b – May 11–12, 2025**
**Format:** Text Message (Two Screenshots)
**Party:** Christian Rogers to Marcella Neumann

**Messages (Blue):**
"There's been a lot on my mind lately, and after our talk today, I felt like I needed to finally say some of it. Not out of anger or blame, but because it's been sitting heavy on my heart. All I ever wanted was to have you and Hudson. A real family. I know I wasn't perfect, but I tried. I should've never left Flint. I was doing good there, I was stable. But I moved because I had hope. Hope that maybe we could come back together. That somehow, we'd be a family again. I never understood what I did that was so wrong. Because I truly loved you. I didn't just love you — I wanted to spend my life with you. I dreamed of us raising our son together, making a home, building a life. And yeah, maybe my timing wasn't always right, but we both know that wasn't the only thing that made this fall apart. When it became clear that wasn't going to happen, I started to shut down. Not because I stopped caring, but because I felt like I was losing everything."

"And I did lose a lot. While I was out there trying to chase a family that wasn't coming back, I missed time with my own. My dad passed, and I was alone. And it hurt in ways I still can't explain. I left behind the people I loved, thinking I was doing the right thing for us, for Hudson — but it never turned out the way I hoped. I don't blame you. I've made mistakes too, and I'll always own that. But I need you to understand: your feelings matter, but so do mine. You're not the only one who's been hurt in all this. I hurt too. I still do. I'll always love you. Not just because you're Hudson's mom, but because a part of me always will. I'm not writing this to guilt you or stir up the past. I just want you to know my side –– the part I don't always show. And maybe, somewhere in all of this, we can find a little more peace. For Hudson, and maybe even for ourselves."

Christian (continued):
"Do you have a bigger bed?"

**Summary:**
*Christian sends a long, emotional message reflecting on his hopes for their family, the pain of their separation, and his desire for peace and healing—for both Hudson and themselves. Marcella ignores the message entirely and replies only with, "Do you have a bigger bed?" This shows a clear lack of acknowledgment or empathy, reinforcing a pattern of one-sided communication where Christian's efforts to co-parent and reconnect are dismissed or ignored.*



15A



15b

**EXHIBIT 6**
**Message Cluster 16 – May 15, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
Christian:
"Can't even get a good job for my grades"
"I'll have grandma fix it. She knows what she's doing. And it will make her feel good."
"Yes"
"Wanna see the other school project I did about Hudson"

Marcella:
"Alright, have them look at Hudson's blanket and good job. It's hard to go keep grades above a
op"
"90"
"Are you going to clean up the house??"

**Summary:**
Christian expresses frustration about job prospects despite his strong academic performance and
shifts focus to Hudson, offering a sentimental solution involving his grandmother and proudly
mentioning a school project. Marcella briefly acknowledges his grades and mentions Hudson's
blanket but pivots to ask if he will clean the house, ignoring his deeper emotional message and
Hudson's involvement in Christian's education. This exchange supports the ongoing pattern of
one-sided communication and dismissive responses from Marcella during periods when
Christian is attempting to co-parent constructively or show involvement.



Alright, have them look at Hudson's blanket and good job. It's hard to go keep grades above a op

90

Are you going to clean up the house??

16

**EXHIBIT 6**
**Message Cluster 17 – May 15, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
Marcella:
"Yeah right lol"
"Oh whatever lol"
"You prolly blame mom"
"Exactly"

Christian:
"Remember you're the mean one"
"It's a fenced in yard so no one is taking him. He will be OK with the dogs."
"Ask him. He will tell you. When Dad has to say no he blames mom."
"I always blame you."
"Mom said it's bedtime. Mom said no more candy."
"Stuff like that"

**Summary:**
This exchange shows Christian actively parenting and ensuring Hudson is safe, cared for, and following a structured routine—specifically citing a fenced yard and bedtime limits. When Christian states "I always blame you," it's clearly a sarcastic response to Marcella's accusation, immediately followed by examples like enforcing "Mom said no candy" or "Mom said bedtime"—highlighting his effort to maintain consistency with Marcella's rules, even when Hudson doesn't like them.

Rather than undermining Marcella, Christian is supporting her parenting standards while Hudson is in his care. This reinforces a pattern of respectful co-parenting, not conflict. Marcella's dismissive tone also contrasts with Christian's effort to explain the situation constructively.



17

**EXHIBIT 6**
**Message Cluster 18 – May 15, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann
**Messages:**

Christian:
"Mom said its bedtime. Mom said no more candy."
"Stuff like that"

Marcella:
"He'll probably need a bath tonight. We are at the beach today. I'm going to send that hydrocortisone cream. He can only have it three times a day but that rash keeps coming back. I think it's from sweat and heat."
"So make sure your blankets are washed"

Christian:
"Ok. I'll put it on"

Marcella:
"Let me know when your close so we can go outside"

Christian:
"Ok"
"Here"


**Summary:**
This exchange shows Christian following Marcella's care instructions regarding Hudson's rash and medication schedule, as well as respecting her household boundaries even during his time with their son. His responsiveness and coordination reflect cooperative parenting efforts. Furthermore, Christian completed the pickup for parenting time, reinforcing that Marcella had no objections to his vehicle at the time. This is relevant since Judge Tomlinson allowed Marcella to refuse exchanges based on her assessment of the vehicle's condition. Her cooperation here undermines any later claims that the vehicle was not acceptable.



**EXHIBIT 6**
**Message Cluster 19 – May 15, 2025**
**Format:** Text Message Exchange
**Parties:** Christian Rogers and Marcella Neumann
**Messages:**

Marcella:
"How it Hudson"

Christian:
"Fine"

Marcella:
"Where you guys at??"

Christian:
"Playing on the swing across from my grandmas"

Marcella:
"Awe is your family over?"

Christian:
"He wants his dad rn. He dont want to play with the kids"

Christian (7:51 PM):
"When did he go to monster ja."
"Jam"

Marcella:
"He didn't"


**Summary:**
This exchange reflects a calm and cooperative interaction where Marcella inquires about Hudson's well-being during parenting time. Christian responds respectfully and keeps her informed of their activities. He highlights Hudson's desire to spend time with him, showing their strong bond. The conversation is peaceful and child-focused, further demonstrating Christian's responsible parenting.



19

**EXHIBIT 6**
**Message Cluster 20 – May 15, 2025**
**Format:** Text Message Exchange with Photo
**Parties:** Christian Rogers and Marcella Neumann
**Messages:**

Christian:
"I'll have him call as soon as he wakes up. The bath an bottle put him to sleep"

Marcella:
└

Christian:
"First thing in the morning."

**[Attached Photo: Hudson with dirt on his face and chest, standing outside shirtless on the porch]**

**Summary:**
Christian gives an update to Marcella explaining that Hudson has fallen asleep after his bath and bottle, and promises a call first thing in the morning. Marcella reacts with a sad emoji but does not respond further. The attached photo shows Hudson after playing outside, with visible dirt from a fun day. This demonstrates engaged parenting and communication from Christian while again showing Marcella's emotional reaction without reciprocal dialogue. Christian's comment shows he is caring for Hudson's needs and honoring contact efforts.

**EXHIBIT 6**
**Message Cluster 21 – May 16, 2025**
**Format:** Text Message Exchange with Photo
**Parties:** Christian Rogers and Marcella Neumann
**Messages:**

Christian:
"Yes he's sleeping"
"I was showing the dirt on his face"

Marcella (8:25 AM):
"How did Hudson do with the thunderstorm?"
"Is he awake?"

Christian:
"Yea he's eating French toast. We will call after he's done"
"He woke up during them and had to get right up next to me"

Marcella (1:51 PM):
"How's he doing"

**[Attached Photo: Hudson walking outside in a blue shirt, back turned]**

**Summary:**
Christian updates Marcella on Hudson's night, including how he handled the thunderstorm and his morning routine. Christian describes comforting Hudson and promises a follow-up call. Marcella checks in but does not respond to prior comments about the previous photo. A photo of Hudson outside follows, confirming safe and normal activity during parenting time. The messages continue to show Christian's engaged parenting while Marcella's input remains minimal and focused on short questions rather than reciprocating emotional or logistical involvement.



11:18

Marcella Neu...

How did Hudson do with the
thunderstorm?

Is he awake?

How's he doing

↓

**EXHIBIT 6**
**Message Cluster 22 – May 16, 2025**
**Format:** Text Message Exchange with Photo
**Parties:** Christian Rogers and Marcella Neumann
**Messages:**

**[Attached Photo: stitched seam on a light blue blanket, shown after repair]**

Christian:
"I think I did a good job"

Marcella:
"Thank you"

Christian:
"No need to thank me. Hudson already did"

**Summary:**
Christian sends a photo of Hudson's blanket after stitching it, responding to Marcella's earlier concern about its condition. He takes initiative in repairing it himself and proudly shares the result. Marcella offers a brief "Thank you," and Christian replies that Hudson has already shown his appreciation. This interaction highlights Christian's direct involvement in Hudson's care and attentiveness to small but meaningful parental responsibilities, like mending items important to their son.



**EXHIBIT 6**
**Message Cluster 23 – May 15–18, 2025**
**Format:** Text Message Exchange and Photos
**Parties:** Christian Rogers and Marcella Neumann

**Messages:**
Marcella:
"How it Hudson"
"Where you guys at??"
"Awe is your family over?"
"How did Hudson do with the thunderstorm?"
"Is he awake?"
"How's he doing"
"Are you able to send me anything towards his registration fee"
"There's no bug beds righy"
"Do you have fruit and veggies?"
"Where"

Christian:
"Fine"
"Playing on the swing across from my grandmas"
"He wants his dad rn. He dont want to play with the kids"
"When did he go to monster ja."
"Jam"
"I'll have him call as soon as he wakes up. The bath an bottle put him to sleep"
"First thing in the morning."
"Yes he's sleeping"
"I was showing the dirt on his face"
"Yea he's eating French toast. We will call after he's done"
"He woke up during them and had to get right up next to me"

**Summary:**
This cluster captures the final period of Christian's parenting time, ending May 18, 2025. He provided care, meals, hygiene, comfort during a thunderstorm, stitched Hudson's blanket, and engaged in outdoor play. Marcella raised no objections about safety, parenting ability, or the vehicle used — which Christian used for the pickup, important because the court allows her discretion to reject vehicles if she finds them unsafe. The conversation remained cordial, and there was no indication of conflict or concern leading up to the cutoff. This series directly rebuts any claim that parenting time ended for safety or neglect reasons.



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**


**CHRISTIAN ROGERS,**
Plaintiff,

v.
**JUDGE MICHAEL TOMLINSON**, et al.,
Defendants.

Case No.:
Hon.:


## EXHIBIT 5

## Message from Marcella Neumann – Parenting Time Denial Due to Warrant


This exhibit contains a written message from Marcella Neumann to Christian Rogers, dated May 28, 2025, in which she expresses that Hudson will not be allowed to go with Plaintiff until matters related to an active bench warrant are "taken care of thru court."

In the message, Marcella cites concerns about the plaintiff's warrant, the living situation, and transportation, but does not reference any court order authorizing her to suspend parenting time. She concludes by stating, "He won't be going with you until things are taken care thru court," indicating that parenting time was withheld without a court ruling.

This exhibit is submitted in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction to demonstrate that parenting time was unilaterally denied outside the scope of lawful court enforcement, in violation of due process.


**Respectfully submitted,**

**Christian Rogers**
2017 Goodrich Ave
Flint, MI 48503
810-643-9062
Christianrogers65@gmail.com
**Pro Se Plaintiff**

# EXHIBIT 5

**Message from Marcella Neumann – Parenting Time Denial Due to Warrant**
**Date:** Wednesday, May 28, 2025 – 1:30 PM
**Sender:** Marcella Neumann
**Recipient:** Christian Rogers

*"Ya know honestly Christian, I'm not trying to be rude. I would like Hudson to be able to spend time with you but the living situation and the driving situation is not what we agreed upon in court.

You have an active warrant right now and I don't feel comfortable if you were to be picked up and he was left with people he doesn't know.

He won't be going with you until things are taken care thru court. I hope you understand that I only ever have our child's best interests in mind."*

**Summary:**
This message was sent ten days after parenting time was first denied and clearly states that Hudson would not be returned until Christian "takes care of" the bench warrant. Marcella does not reference any legal authority, court order, or evidence of harm. This communication supports Plaintiff's argument that his parenting time was suspended extrajudicially and without due process, in violation of his constitutional rights.



**Marcella Neumann**

Same time tomorrow?

4oclock works, our order is 6pm but I'm thinking that's too late unless you want to do. Also, are you planing on bringing him back Sunday

Ya know honestly Christian, I'm not trying to be rude. I would like Hudson to be able to spend time with you but the living situation and the driving situation is not what we agreed upon in court. You have an active warrant right now and I don't feel comfortable if you were to be picked up and he was left with people he doesn't know. He won't be going with you until things are taken care thru court. I hope you understand that I only ever have our child's best interests in mind.

You dont have the best interest for Hudson. You cant deny a court order.

Type a message

amazon Get the App **Affordable never looked this good** Deals & price-drop alerts, only on the Amazon app

**EXHIBIT 7**

**Declaration of Christian Rogers Authenticating Exhibit 6**

I, Christian Rogers, declare as follows:

1. I am the Plaintiff in this action and am representing myself pro se.
2. I am over the age of 18 and competent to testify to the matters set forth herein. This declaration is made based on my personal knowledge.
3. I submit this declaration in support of Exhibit 6, titled **"Text Message Log – Cooperative Co-Parenting (April–May 2025)"**, which is attached to my Emergency Motion for Temporary Restraining Order and Preliminary Injunction.
4. Exhibit 6 consists of 25 clusters of text message exchanges between myself and Marcella Neumann, the mother of my son. These messages were exchanged between March and May 2025.
5. The messages contained in Exhibit 6 were sent and received through my personal cellphone. I have preserved these messages through screenshots and carefully compiled them into the document as presented.
6. Each message and image shown in Exhibit 6 is a true and accurate copy of the original conversation as it appeared on my phone, without alteration or fabrication. Images sent or received in the course of parenting were also included where relevant.
7. To maintain clarity, each cluster includes a summary of the conversation, which I wrote based on the content of the messages and context surrounding the exchange.
8. I respectfully submit this declaration to verify the authenticity of Exhibit 6 and to confirm that all messages reflect genuine communication between myself and Marcella Neumann prior to the unlawful suspension of my parenting time.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 30 day of ＪＵＬＹ , 2025, in Flint, Michigan.

**Respectfully submitted,**

Christian Rogers
2017 Goodrich Ave
Flint, MI 48503
(810) 643-9062
Christianrogers65@gmail.com
**Pro Se Plaintiff**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

**CHRISTIAN ROGERS**,
Plaintiff,
v.
**JUDGE MICHAEL TOMLINSON, et al.**,
Defendants.
Case No.: [To Be Assigned]
Hon.: [To Be Assigned]

**EXHIBIT 8**

**Custody Motion Filed by Marcella Neumann – May 23, 2025**

This exhibit includes the full custody motion filed by Marcella Neumann in state court on May 23, 2025, at 3:40 PM. The timing of this filing directly coincides with her refusal to allow the Plaintiff parenting time from May 29 through June 1, 2025.

The motion includes allegations of instability, poor hygiene, marijuana odor, and transportation issues—but these were never previously raised in any co-parenting messages or prior court filings. They sharply contradict the cooperative behavior documented in Exhibit 6 and appear retaliatory in nature.

This exhibit is submitted to demonstrate:

- The timing of the motion aligned with denied parenting time.
- The absence of real-time concerns before this filing.
- The unsupported and exaggerated nature of the claims.

- The shift in behavior after Plaintiff filed complaints and began asserting his rights.

This document supports Plaintiff's federal claim that state actors allowed the suspension of his parenting time without due process and without any emergency finding, in violation of constitutional protections.

7-30-2025



STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF

_____ Rogers
Plaintiff,

-vs-

Christian Rogers
**Name** **Defendant**

Case Number: T-70-_____

## AFFIDAVIT OF FACTS SUPPORTING CHANGE OF CIRCUMSTANCES TO REQUIRE AN INVESTIGATION AND/OR EVIDENTIARY HEARING ON CHILD CUSTODY MCR 3.210(C)(7)

Now comes the undersigned, and after being duly sworn, states the following facts and witnesses, and having attached the following documents in support of my motion for change of custody:

That custody of the minor child(ren) was adjudged by court order/Judgment on _____
Date

That since the date of the last custody order I will prove there has been a change of circumstances that would require a change in custody due to the following facts/issues involving the minor child(ren):

Christian has continued to fail providing transportation. Christian is in contempt of court and moved out of St. Clair County. I have concerns for Hudsons safety and well being in his new living circumstan(s). Dirty clothes and smells of marijuana, no hygiene or brushing teeth.

That the following is a list of all witnesses who would testify to the above facts:

Desiree Liniarsky

Missi Hahn

I have attached the following Reports by Protective Services, Doctors, Mental Health Professionals, Schools, Police Agencies, Other Courts, or other Professionals, as well as any other records that will support



UNIFORM CHILD CUSTODY
JURISDICTION
ENFORCEMENT ACT AFFIDAVIT

T23-1557-DS

PROBATE COURT
COUNTY

CASE NAME:

1. The name and present address of each child (under 18) in this case is:

Hudson Rogers
2109 Parkdale Dr. Port Huron, Mi. 48060

2. The addresses where the child(ren) has/have lived within the last 5 years are:
1985 Vine St. St. Clair Mi. 48079
2109 Parkdale Dr. Port Huron, Mi. 48060

3. The name(s) and present address(es) of custodians with whom the child(ren) has/have lived within the last 5 years are:
Manilla Neumann - 2109 Parkdale Dr. Port Huron, Mi. 48060
- 1985 Vine St. St. Clair, Mi. 48079

Uniform Child Custody Jurisdiction Enforcement Act Affidavit   (8/21)     Case No. T25 1551 08

☐ 8. I state that a party's or child's health, safety, or liberty would be put at risk by the disclosure of this identifying information.

I have filled this form out completely, and I acknowledge a continuing duty to advise this court of any proceeding in this state or any other state that could affect the current child-custody proceeding.

_Umella Numann_                    MONELLA NEUMANN 2109 Parkdale Dr. Port
Signature of affiant          Name of affiant (type or print)   Address of affiant     HURON, MI. 48040

Subscribed and sworn to before me on  5 27 25
                                       Date

My commission expires on  3 12 30              Deputy clerk/notary public signature
                                                        Tuffin
Notary public, State of Michigan, County of  St Clair     Name (type or print)
☐ This notarial act was performed using an electronic notarization system or a remote electronic notarization platform.   ☐ Acting in the County of _____

"Home state" means the state in which the child(ren) lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with a parent or person acting as a parent. A period of temporary absence of a parent or person acting as a parent is included as part of the period.

Galaxy S24 Ultra

To whom it may concern, I Marcella Neumann mother and custodial parent of Hudson Rogers, ask the court to revise the custody agreement we have in place. I am asking the courts to grant me full physical custody and joint legal in the best interests of Hudson.

Hudson's safety and stability are my greatest concern. As our previous custody agreement has not been followed. I have continued to provide transportation, food, and clothing on Christian's scheduled weekends in order to ensure Hudson's safety and required needs. As of now, Christian has an outstanding child support balance and an active bench warrant. Christian states he has been out of work for months and unable to provide financially. Christian does not have a reliable vehicle and recently lost phone service. Most recently Christian lost his house in St. Clair and moved back to Flint which has caused more instability to Hudson. Christian continued to lie to me about his living situation and residential address. It is further indicated that multiple families are in and out of his current residence. This raises a great deal of concern for Hudson's safety. As Hudson does not have a room, I am not sure in case of emergency or in case he needs clothes, transportation. Hudson has come home with _____ and smelling of marijuana. I have _____ with no avail. I have _____ things work between Christian and _____ failed to step up as a father.

Galaxy S24 Ultra

...is my biggest goal to promote a safe environment for Hudson to grow up in and Christian has failed to provide that to Hudson. I am greatly concerned for Hudsons well being when he is away at dads. I am currently in nursing school and manage to work on off days while Hudson participates in daycare. I believe it is the best interest of Hudson to reside with me full time to ensure adequate nutrition, proper hygiene, and consistency. Christian Rogers does not actively participant in parenting and has proven to be unstable on multiple occasions and unwilling to work out our differences. I ask the courts to review and revise our current custody order to grant myself full physical custody to avoid anymore conflict and disturbances in Hudsons life.

Thank you and best regards,
Mariella neumann

In addition, Christian has tried to manipulate the situation and has previously threatened times to give up his rights. His current situation is unlivable and looks like it [will be] condemed. It is better to raise a [child] with respect, integrity and [be] given his own [personal space to grow].

Galaxy S24 Ultra

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

**CHRISTIAN ROGERS,**
Plaintiff,
v.
**JUDGE MICHAEL TOMLINSON, et al.,**
Defendants.
Case No.:
Hon.:


# EXHIBIT 9

**Text Message – Mischaracterized as "Giving Up Rights" (Approx. January 2025)**

This document is a true and accurate reproduction of a text message Christian Rogers sent in early 2025. The message was later referenced and distorted by Marcella Neumann in her custody motion filed May 23, 2025.

The statement was made in a moment of frustration and emotional exhaustion after repeated parenting time denials—including over Christmas—and a lack of court enforcement. The message does **not** constitute a legal waiver of parental rights and must be understood in the context of Christian's ongoing legal efforts at the time, including a parenting time complaint filed before this message was sent.

This exhibit is submitted in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.


**Respectfully submitted,**

Christian Rogers
2017 Goodrich Ave
Flint, MI 48503
(810) 643-9062
Christianrogers65@gmail.com
*Pro Se Plaintiff*

7-30-2025

## EXHIBIT 9

**Text Message – Emotional Reaction to Repeated Holiday Denials**
**Sender:** Christian Rogers
**Recipient:** Marcella Neumann
**Date:** January 2025
**Format:** Screenshot of text message

**Message Content:**

"And if they're not gonna do anything about the parenting time issue then I'll let you have all the rights because I don't have no say in anything anyways.
I'm not gonna be threatened with jail when I can't even get my son on Christmas. And it's court ordered.
I have no problem letting everything go at this point."

**Summary:**
This message was sent after Christian Rogers was denied parenting time over the 2024 Christmas holiday—his **second consecutive Christmas denied without legal justification**. The denial came under vague claims of "safety," yet no evidence or motion was filed, and no court hearing was held. As a result, Christian's father spent his final Christmas without seeing his grandson before passing away just weeks later in January 2025.

Christian's message expresses despair over being stripped of his role as a father without due process. It is not a waiver of rights but a direct response to the courts failing to enforce his court-ordered parenting time while simultaneously threatening him with incarceration for support-related matters. This emotional reaction has since been mischaracterized by the opposing party.

Christian never relinquished his rights—he was seeking equal enforcement, fairness, and time with his son during a critical family moment.



9:37

← can you take him 📞 🎥 ⋮

4/4 results found ‹ ›

I'm not getting over anything. It's another year you robbed me of my holidays. Your a piece of shit for it.
I told you I filed a complaint. And I'll get my make up time

Already

Alrighty

And if their not gonna do anything about the parenting time issue then I'll let you have all the rights because I don't have no say in anything anyways.
I'm not gonna be threatened with jail when I can't even get my son on Christmas. And it's court ordered.
I have no problem letting everything go at this point.



My next sched··'·d weekend is 1/9-1/12

My bad 1/19-1/22

⊕ Text message ☺ 📷 ·ılı·

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

**CHRISTIAN ROGERS**,
Plaintiff,
v.
**JUDGE MICHAEL TOMLINSON**, et al.,
Defendants.

Case No.:
Hon.:

**EXHIBIT 10**
**Defendant's Response to Plaintiff's Motion to Modify Custody**

This exhibit contains Plaintiff Christian Rogers' written response to Marcella Neumann's
custody motion, which was filed on July 24, 2025, in the 31st Circuit Court of St. Clair County.
The response directly addresses the allegations raised in Marcella Neumann's May 23, 2025
motion and offers documented rebuttals, including timelines, co-parenting records, and facts
refuting claims of instability or parental unfitness.

This document is submitted in support of the federal claim that Plaintiff was denied parenting
time without due process and that the state court relied on retaliatory and unsupported allegations
while ignoring Plaintiff's formal objections.

☐ **Attached Pages of Exhibit 10**:

1. **Page 1 – Title and Opening Statement**

2. **Page 2 – Lack of Co-Parenting & Ignored Safety Concerns**

3. **Page 3 – False Accusations & Continued Involvement**

4. **Page 4 – Attached Timeline and Conclusion**

## EXHIBIT 10

**Plaintiff's Response to Custody Motion (Filed July 24, 2025)**

This exhibit contains Plaintiff Christian Rogers' official response to the custody motion filed by Defendant Marcella Neumann on May 23, 2025, in the St. Clair County Circuit Court. The response was filed on **July 24, 2025**, in full compliance with Michigan Court Rules, more than 7 days prior to the scheduled hearing on **August 24, 2025**.

Plaintiff's response directly denies each of Defendant's allegations, objects to the lack of supporting evidence, and challenges the misuse of an unverified motion to justify prior parenting time suspension without due process. The response emphasizes that Defendant seeks full custody without demonstrating any proper change of circumstances, and attempts to gain rights she already exercises while denying the Plaintiff's.

This response is also offered in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, as further evidence of retaliatory legal actions and unequal enforcement of family court procedures.

**Respectfully submitted,**

Christian Rogers
2017 Goodrich Ave
Flint, MI 48503
(810) 643-9062
Christianrogers65@gmail.com
**Pro Se Plaintiff**

7-30-2025



STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF Saint Claire County
Family Division

MARCELLA NEUMANN,
*Plaintiff*

v.

CHRISTIAN ROGERS,
*Defendant*

Case No: TS 2023-001557-DS
Hon. Judge Tomlinson

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO MODIFY CUSTODY

To the Honorable Court:

I respectfully submit this written response to the Plaintiff's motion to modify custody. The claims made in Plaintiff's motion paint a false picture of who I am as a father and the reality of our co-parenting relationship. While no parent is perfect, I have always shown up for my son when allowed, maintained a focus on his emotional well-being, and kept my concerns about our co-parenting private from him. The same cannot be said for the Plaintiff, who has repeatedly used access to our son as leverage during personal disagreements and ignored my requests for parenting time and information about Hudson's safety.

### A Pattern of Denied Parenting Time & Retaliation

Plaintiff has cut off my parenting time entirely since May 2025, without a court order. She cited vague and shifting "safety" concerns that were never discussed prior to court filings. For example, I was denied time on Christmas Day without explanation—only for her to later offer the 26th. That alone proves there was no true safety issue; it was purely retaliatory.

She also denied me communication with Hudson on Father's Day and on multiple other occasions, even when I begged just for a phone call. Meanwhile, there are documented

Galaxy S24 Ultra

messages where she called me to take Hudson during her time because "they needed a break." I've never once said I needed a break from my son.

## Lack of Mutual Co-Parenting

Throughout our entire co-parenting relationship, I've consistently tried to help accommodate Plaintiff. I took Hudson during her school hours, when her car broke down, and during unexpected schedule changes. However, she never reciprocated. I was denied any make-up time—even when my father died. I never even asked to switch weekends for that. I may have asked for an extra day for events like my brother's balloon release, but she always had "plans." Yet she felt entitled to schedule her family Thanksgiving during my assigned weekend.

This double standard has been ongoing, and it's only escalated in recent months.

### Evidence of Concern Ignored

I have multiple messages where I asked Plaintiff about injuries Hudson had—bruises, a smashed fingernail, and what looked like a burn. I never got a clear answer. On one occasion, unprompted, Hudson told me "Mom hit me in the face." I asked her about it, and her reply was "No lol, just a smack on the butt." Her sarcasm and refusal to take the concern seriously is disturbing.

Later, CPS got involved—not because of anything I did, but because of her and daycare. I was never informed directly, never investigated, and never contacted. She continues to keep me in the dark even though I'm equally responsible for our son's well-being.

## Personal Struggles, Not Parental Failure

It's true that I have had financial and transportation issues. But I communicated them openly and in real-time. In November, my van was taken after being impounded. The man I bought it from got it out and sold my tools—tools I needed for work. I'm currently suing him. My former employer gave me a company vehicle, but took it back after I missed a day to help Marcella.

Galaxy S24 Ultra



Despite all this, I kept trying. I applied to jobs, interviewed as far back as fall of 2024, and I start work again on June 23, 2025. The court also needs to understand—I've been stuck legally. I couldn't file my own motion because of the outstanding warrant. My lawyer wouldn't move forward unless I paid $700.

## False Accusations and Her Use of the Court as a Weapon

She accused me of wanting to sign over my rights, twisting my words. I told her, out of frustration, that if I wasn't going to be allowed to parent fairly, then maybe she'd prefer that I sign them over. But she wouldn't, because she would lose child support. It wasn't abandonment. It was the cry of a father who felt helpless.

Now, she's using old friends and family as witnesses—people she herself spoke badly about. One, Misti, has a known Adderall problem and is involved in her own custody battle. The other, Deserae, has been accused of physically abusing her partner. I have messages where Marcella herself expressed concern about both of them.

## Proof of My Involvement and My Son's Love

I have videos showing joyful, positive time with Hudson. I have three school assignments I wrote about him while keeping a 4.0 GPA in college. He cried when he had to leave my house. He begged to stay. He's safe with me. He's loved with me. He's emotionally grounded with me.

And yet the only thing separating us now is Plaintiff's retaliation and a system that hasn't yet heard my full side.

## Attached Timeline

I have attached a full timeline from October 2024 to the present. It shows every ignored message, every denied request, and the consistency of my involvement. Any additional dates or documentation can be provided upon request. The record is clear: I'm not perfect, but I've always been a present, engaged, and loving father whenever I was allowed to be.

Galaxy S24 Ultra



**Conclusion**

If this court grants her motion, it will be doing a disservice not just to me—but to Hudson. Every child deserves two loving parents. I have always made the effort. I am asking only for what is fair: for the court to see through the retaliation and hold both parents accountable to the same standard.

Respectfully,
**Christian Rogers**
(810)643-9062
Christianrogers65@gmail.com
2017 Goodrich Ave Flint Mi 48503
06/21/2025

6/21/25

Galaxy S24 Ultra

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

**CHRISTIAN ROGERS,**
Plaintiff,
v.
**JUDGE MICHAEL TOMLINSON,** et al.,
Defendants.

Case No.:
Hon.:


# SUPPLEMENTAL DECLARATION OF CHRISTIAN ROGERS

**(In Support of Emergency Motion for TRO and Request to Stay State Proceedings)**

I, **Christian Rogers**, declare as follows:

1. I am the Plaintiff in this action and represent myself pro se.
2. I am over the age of 18 and competent to testify to the matters set forth herein. This declaration is made based on my personal knowledge.
3. I submit this declaration in further support of my Emergency Motion for Temporary Restraining Order and Preliminary Injunction.
4. I have been informed that a hearing on Defendant Marcella Neumann's custody motion is currently scheduled for **August 27, 2025**, in the St. Clair County Circuit Court.
5. That custody motion was filed on **May 23, 2025**, but it was not marked as an emergency and includes no supporting evidence or verified claims of harm.
6. My parenting time was already suspended by oral order of Judge Michael Tomlinson on **July 24, 2025**, during a hearing that was scheduled **only for child support enforcement**, without motion, notice, evidence, or due process.
7. On or around July 25, 2025, I prepared a motion for recusal in state court, which I intend to file promptly upon assignment of a federal case number, due to the unlawful suspension of my rights and demonstrated bias by Judge Tomlinson.
8. I respectfully request that this Court issue a **temporary stay of all proceedings in St. Clair County Circuit Court**, including the August 27 hearing, until the federal claims raised in this action can be reviewed and adjudicated.
9. I make this request in good faith to prevent further irreparable harm to my parent-child relationship and to preserve the integrity of the constitutional issues now before this Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 3ᵒ day of ____Jo ly____ , 2025, in Flint, Michigan.

**Respectfully submitted,**
/s/ Christian Rogers


**Christian Rogers**
2017 Goodrich Ave
Flint, MI 48532
(810) 643-9062
Christianrogers65@gmail.com
Pro Se Plaintiff